Erin Simonitch, State Bar No. 314058
esimonitch@crla.org
California Rural Legal Assistance
511 D Street
Marysville, CA 95901
Telephone: (530) 742-5191
Fax: (530) 742-0421

Christopher Brancart, State Bar No. 128475
cbrancart@brancart.com
Brancart & Brancart
P.O. Box 686
Pescadero, CA  94060
Telephone: (650) 879-0141

Attorneys for Plaintiff ROMONA J. WAFER

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMONA JANINE WAFER,<br><br>PLAINTIFF,<br><br>vs.<br><br>EASTGATE TERRACE APARTMENTS, LLC., BLVD RESIDENTIAL INC; Crystal Bickford, and Michelle Keller,<br><br>DEFENDANTS. | CASE NO.<br><br>**COMPLAINT**<br><br>(42 U.S.C. § 3601 et seq.; Cal. Gov't Code § 12927 et seq.; Cal. Civil Code § 52 et seq.; Cal. Bus. Prof. Code § 17200 et seq.; Cal. Bus. Prof. Code § 17500 et seq.; Cal. Gov't Code § 12955.) |

## I. NATURE OF THE ACTION

1. Plaintiff Romona Wafer sues the owners and manager of the Eastgate Apartments in Marysville alleging discrimination on the basis of race, disability, and source of income in violation of federal and state fair housing laws.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. §§ 3613 and 12188(a). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's state law claims because they arise out of the common nucleus of operative facts that form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Eastern District of California because the claims alleged in this complaint arose in Yuba County.

## III. THE PARTIES AND THE SUBJECT PROPERTY

4. Plaintiff Romona Wafer, 62, is an African-American woman and a person with a disability as defined under state and federal laws. Her source of income is Social Security Disability Income (SSDI) payments. She is also the recipient of a Section 8 Housing Choice Voucher which subsidizes a portion of her monthly rent. As alleged below, Defendants injured Wafer in the course of her effort to rent a dwelling at the Eastgate Terrace Apartments, located at 1170 East 22nd Street in Marysville, California ("Eastgate Apartments" or "Eastgate").

5. The Eastgate Apartments are dwellings subject to state and federal housing laws.

6. Defendant Eastgate Terrace Apartments, LLC, a California limited liability company, owns the Eastgate Apartments.

7. Defendant BLVD Residential, Inc.("BLVD") is a Delaware corporation conducting business in California. BLVD operates and manages the Eastgate Terrace Apartments on behalf of Eastgate Terrace Apartments, LLC. BLVD employs or employed defendant Crystal Bickford as Eastgate's site manager and defendant Michelle Keller as Eastgate's property supervisor.

8. Each defendant is directly or vicariously liable for the unlawful housing practices alleged in this complaint under the following theories:

    a. For the defendant's own conduct;

    b. For failing to take prompt action to correct and end an unlawful housing practice by that defendant's employee or agent, where the defendant knew or should have known of the unlawful conduct;

    c. Failing to take prompt action to correct and end an unlawful housing practice by a third-party, where the defendant knew or should have known of the unlawful conduct and had the power to correct it; and,

    d. Each defendant is also vicariously liable for unlawful conduct by the defendant's agent or employee, regardless of whether the defendant knew or should have known of the conduct that resulted in the unlawful housing practice, consistent with agency law.

### IV. FACTUAL ALLEGATIONS

9. In 2022, the Regional Housing Authority of Yuba, Sutter, Colusa, and Nevada Counties ("RHA"), headquartered in Yuba City, issued a Section 8 Housing Choice Voucher to Plaintiff Romona Wafer. In July 2022, Wafer commenced a search for rental housing in the Marysville area.

10. On July 20, 2022, Wafer and her sister, Zondra Rodriguez, who resided in Yuba City, traveled to Eastgate Apartments to inspect units available for rent.

11. Wafer and Rodriguez knocked on Community Manager Crystal Bickford's door and waited for some time. Finally, while the sisters were discussing whether to call BLVD's main office, Bickford opened the door and agreed to show Wafer Unit #1, a vacant one-bedroom.

12. During Wafer's inspection, Bickford told Wafer that the monthly rent was $1250. Wafer told Bickford that she was on SSDI and intended to pay her rent using a Section 8 voucher issued from the local housing authority. Bickford replied that Eastgate Apartment had no tenant paying rent with a Section 8 voucher. Bickford then stated that she was uncertain whether Eastgate accepted Section 8, but that she would check with her supervisor.

13. At the end of the inspection, Wafer's sister asked Bickford for a rental application. Bickford told her she had no paper applications on hand, but that Wafer could apply online. Bickford provided Wafer with a business card which included a website address for online applications.

14. On July 21, Wafer attempted to apply online for rental of Unit #1. The online application required a unique sign-on that identified Plaintiff by name. When Plaintiff signed on and attempted to apply, the link to the application for the one-bedroom unit # 1 was blocked. The website instructed applicants to contact Bickford if interested in renting the one-bedroom unit.

15. Wafer found, however, that she was able to access and submit an online application for a two-bedroom, unit #14, with a listed rental rate of $1400 a month. It appeared that the only listing that did not have an accessible online application was the one-bedroom unit # 1 listing she had told Mgr. Bickford she was interested in applying for.

16. The online application included a set of questions explicitly directed at Section 8 applicants. Wafer listed the Regional Housing Authority as her Guarantor and provided her RHA's worker's contact information. Wafer also paid the mandatory $46.80 processing fee and a $321 holding deposit to submit her online application. Wafer further emailed a copy of an RHA's form, Request for Tenancy Approval, which Eastgate would have to complete in order for RHA to subsidize Wafer's rent.

17. On July 22, Wafer telephoned Bickford to confirm receipt of Wafer's online application. After two attempts to reach Bickford, Wafer left a voicemail stating her intention to deliver a hard-copy of the application to Bickford. That evening, Wafer drove to Eastgate and deposited a hard copy of her application in the manager's drop box.

18. After she received no response from Bickford by July 25, Wafer again attempted to reach Bickford by telephone without success. Wafer and her sister then drove back to Eastgate in hopes of locating Bickford to learn about the status of Wafter's application.

19. Wafer and her sister located Bickford in the manager's office and inquired about the status of Wafer's rental application. Bickford responded that she was unaware of any application by Wafer.

20. Wafer and her sister observed the hard copy of Wafer's application on the manager's desk. Wafer pointed out her application on the desk and explained that she had paid her processing fee and holding deposit. Wafer also handed Bickford another copy of the RHA's Request for Tenancy Approval form, explaining that the landlord needed to complete the form and return it to the prospective tenant or RHA. Bickford reiterated that she did not know whether Eastgate accepted Section 8.

21. Wafer insisted that Bickford complete the Request for Tenancy Approval while awaiting further direction from her supervisor. Bickford then completed and handed the form back to Wafer, who noticed that Bickford had inserted in the form that the monthly rent for Unit #14 was $1550, not $1400 as listed and advertised. Wafer pointed out the discrepancy and Bickford replied that the owner had just raised the rental rate. When asked directly, Bickford refused to honor the original rental rate. Wafer submitted the Request for Tenancy Approval form with the higher rental rate to RHA on July 25.

22. On July 26, Lisa Quillin, an RHA Eligibility Specialist assigned to Wafer's voucher, advised Wafer that the new monthly rental rate of $1,550 exceeded the RHA's payment standard, the total rent that RHA would subsidize under the Section 8 program. Quillin agreed to request that the payment standard be increased so that Wafer could rent Unit #14 using her voucher in spite of the higher rental rate. Quillin then denied the RFTA on July 27.

23. On July 30, Wafer telephoned Bickford requesting that her deposits and fees be refunded. Bickford failed or refused to respond to Wafer's request and never returned her call.

24. Having received no response from Bickford by August 15, Wafer telephoned BLVD complaining about Bickford's handling of her application and renewing her request for a refund of her deposit and fees. The BLVD receptionist referred Wafer to Michelle Keller, Bickford's property supervisor.

25. On August 15, Wafer emailed Keller with a summary of Bickford's behavior and a complaint about Bickford's treatment of her. Keller denied misconduct by Bickford but agreed to refund Wafer's deposit.

5
Wafer v. Eastgate Terrace et al. - COMPLAINT

26. Meanwhile, Quillin advised Wafer that RHA had increased the payment standard for her Section 8 voucher such that Wafer qualified to rent a dwelling at a monthly rental rate of $1,550.

27. On August 17, Wafer emailed Keller indicating that she observed another unit available for rent at Eastgate and asked, "Does Eastgate Terrace accept the Housing Choice Voucher, formerly Section 8?" Keller responded without answering the question, but steered Wafer to another property, Sandpiper Cove Apartments, indicating she was uncertain whether anything was available for rent.

28. Wafer replied that she was interested in the available unit at Eastgate. She explained to Keller that she had loved unit #14 at Eastgate. Wafer further disclosed that she was disabled and lived alone, which raised "huge concerns for me regarding location, safety, sanitation, security…Due to my cognitive disabilities, the location especially is a grave concern." Wafer preferred the location of Eastgate to the complex known as Sandpiper Cove.

29. On August 22, Wafer emailed Keller stating that she had checked availability at the Sandpiper Apartment, as suggested, and learned that nothing was available.

30. On August 23, Wafer attempted to apply for Unit #39 at the Eastgate, but was blocked by the website, receiving a notice to contact Bickford. Wafer emailed Keller, who confirmed that Unit #39 was available. On August 24, Keller emailed Wafer confirmation that Unit #39 was not available and urged Wafer not to wait for a unit to become available at Eastgate. She further stated that she was not familiar with housing vouchers or RFTAs. Regional Mgr. Keller, as Mgr. Bickford had, indicated that she would have to speak to her corporate office to determine if they accepted tenants with vouchers.

31. On August 25, Wafer emailed Keller and Michael Schur, the defendant LLC's registered agent, indicating that she wanted to provide Eastgate's owner with information about the Section 8 voucher program and renewing her interest in renting a unit at the Eastgate Apartments. Wafer provided links to RHA's information and attached a copy of RHA's Approval of Tenancy form.

32. On August 25, Keller replied to Wafer stating that she was in fact familiar with the voucher program. She further indicated that Eastgate was willing to rent a unit to Wafer and that Unit

#30 was available for rent. Keller also informed Wafer that the owner had dropped the monthly rental rate from $1,550 to $1,400.

33. RHA and defendants set September 12 as Wafer's move-in date. Wafer obtained a grant of $500 to pay the move-in deposit. RHA set September 8 as the date to inspect Unit #30, a prerequisite to rental of a dwelling under Section 8.

34. RHA inspected Unit #30 on September 8; Wafer attended the inspection and observed the condition of Unit #30 was substandard in comparison with Unit #1, the first unit she had inspected. Wafer said nothing because she did not want to hurt her chance at obtaining housing. Instead, she asked Keller to send her a copy of the lease for review so that she could sign it before her September 12 move-in date.

35. On September 8, 2022, following RHA's inspection, the housing authority approved Plaintiff's tenancy at Eastgate unit #30, clearing the way for Plaintiff to sign the lease and move in on September 12, 2022.

36. Wafer received a copy of the proposed lease and reviewed it with her sister. They observed several errors in the information inserted in the lease form. They realized that the lease did not conform to the regulations governing Section 8 tenancies. Wafer also flagged that the rental grace period extended to the third of each month, which posed a problem for her ability to pay on time. Wafer paid her share of the monthly rent out of the monthly SSDI check, which did not clear the bank until after the 3rd of the month.

37. On September 11, Wafer emailed Keller and Quinn a memo listing the mistakes in information inserted in the lease form, correcting her move-in date and her vehicle registration and pointing out where the lease terms varied from the Housing Assistance Payment contract between RHA and defendants.

38. Wafer made a reasonable accommodation request necessary for equal access because of her disability. Since her SSDI payments were not delivered and available until after the third of the month, the deadline for timely rental payments, she asked that she be given until the fifth of the

month to pay her share of the rent. The sum paid by RHA and the subsidy payment date would not be affected by this request.

39. On the morning of September 12, Quillin emailed Wafer explaining that there was no need for defendants to change the lease terms because the HAP contract between RHA and defendants superseded any contradictory in the lease, including the disparity in length of the lease which said six months, despite the HAP contract setting the original lease term as one year in accordance with HUD regulations. Quillin explained that lease correctly listed the total rent owed per month, rather than the amount of Wafer's share to be paid by her.

40. Wafer immediately emailed Quillin and Keller, acknowledging the clarification provided by Quillin and accepting the lease terms provided by defendants in light of Quinn's explanation. Wafer also immediately texted Keller stating that Quillin had clarified the lease terms raised in her memo, which eliminated her concern over those terms. She requested an update from Keller.

41. Keller responded with a text saying that she needed to push the appointment back so she could check with her supervisor.

42. Within a half hour, at 9:58 AM on September 12, 2022, Keller responded to Wafer's acknowledgment, describing Wafer's accommodation requests as "extremely alarming" because "we have never received anything like this from any tenant in terms of demands to change substantive provisions in our lease." Keller "categorically" denied any obligation to accommodate Wafer due to her disability, stating:

> "[You demand] that we change the date when rent is due from third day of the month to the fifth day of the month; again, we are absolutely not going to change that date, as all other tenants at Eastgate Terrace have this lease provision. In addition, you want to change the date when you would incur late payment charges from the 3rd day of the month to the 5th day of the month; again, that is not a mere 'correction', as you characterize it, but a significant substantive change that impairs our rights as a landlord to collect rent in a timely manner and on the same basis as every other tenant at Eastgate Terrace."

43. At the end of the email, Keller stated that defendants viewed Wafer's accommodation requests as a counteroffer, which defendants rejected. "We categorically reject these demands and will not be bullied by you and your attorney…We reject your counteroffer and are cancelling today's scheduled move-in. We will not be leasing this unit to you, and we have informed the Regional Housing Authority of our decision."

44. Wafer replied to Keller: "Please accept my apologies. I never meant to come across as a bully and I have no attorney. I was so confused about the process and not aware what your daily procedures were. Please be informed that there is no counteroffer, I was just bringing your attention to what I thought were errors. I still wish to move forward and hope this misunderstanding has been resolved."

45. Keller replied, stating that defendants refused to rent to Wafer because of her request for accommodation and that defendants had already chosen another applicant to rent Unit #30 because they preferred to rent to an applicant "who made no such demands."

46. Keller further alleged that Eastgate had no legal obligation to accommodate her in any way, and implied that Plaintiff would not find any landlord who would be willing to accommodate her, stating, "We wish you luck in your search for a landlord who will accede to your demands."

47. On information and belief, Wafer alleges that Bickford and Keller, acting on behalf of BLVD and Eastgate Terrace Apartments, LLC:

    a. Refused to rent a dwelling to Wafer because of race, color, disability, or source of income;

    b. Imposed different rental charges for the rental of a dwelling upon Wafer because of because of race, color, disability, or source of income;

    c. Failed to process an offer for rental of a dwelling because of race, color, disability, or source of income;

    d. Discouraged Wafer from renting a dwelling because of race, color, disability, or source of income or because of the race, color, disability, or source of income of the person occupying dwellings at Eastgate Apartments;

e. Communicated to Wafer that she would not be compatible with existing residents of Eastgate Apartments because of the race, color, disability, or source of income;

f. Restricted the choices of Wafer by word or conduct in connection with seeking, negotiating for, or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a development;

g. Refused to make a reasonable accommodation in rent due date rules when such accommodations were necessary to afford Wafer an equal opportunity to use and enjoy a dwelling unit;

h. Indicated through words or conduct that a dwelling which was available for rental at the Eastgate Apartments had been rented to another applicant because of because of Wafer's preferred race, color, disability, or source of income;

i. Limited information, by word or conduct, regarding dwellings available for rental, because of Wafer's race, color, disability, or source of income;

j. Provided false or inaccurate information regarding the availability of a dwelling for rental to Wafer because of her race, color, disability, or source of income;

k. Interfered with Wafer in the exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected by federal and state fair housing laws;

l. Retaliated against Wafer for requesting a reasonable accommodation by denying her rental housing; and,

m. Engaged in unfair or deceptive dealings.

48. Defendants, and each of them, committed the acts or practices listed in Paragraph 47, for the purpose or with the effect of denying Wafer full and equal access to the housing of her choice; accordingly, Wafer may prove her claims, as applicable, under the disparate treatment, disparate impact, reasonable accommodation, discriminatory statements, retaliation, or interference liability theories.

49. Each defendant committed one or more of the acts or practices listed in Paragraph 47 with oppression, fraud, or malice or reckless or conscious disregard for Wafer's federal and state rights.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### [Fair Housing Act]
### 42 U.S.C. § 3601 et seq.

50. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

51. By the conduct alleged herein, Defendants, and each of them, injured Plaintiff by committing one or more of the following discriminatory housing practices:

   a. Refusing to rent a dwelling because of race in violation of 42 U.S.C. § 3604(a);

   b. Discriminating in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services in connection therewith, because of race in violation of 42 U.S.C. § 3604(b);

   c. Misrepresenting the availability of dwellings for rent because of race in violation of 42 U.S.C. § 3604(d);

   d. Refusing to rent a dwelling because of disability in violation of 42 U.S.C. § 3604(f)(1);

   e. Discriminating against Plaintiff in the terms, conditions, or privileges of sale or the rental of a dwelling, or in the provisions of service or facilities in connection with such dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2);

   f. Refusing to make a reasonable accommodation when such accommodation may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling unit in violation of 42 U.S.C. § 3604(f)(3)(B);

   g. Interfering with the exercise of right protected under the Fair Housing Act in violation of 42 U.S.C. § 3617;

    h.  Denying access to online housing opportunities because of race or disability in violation of 42 U.S.C. § 3606.

52. Accordingly, Wafer is an aggrieved person entitled to relief under 42 U.S.C. § 3613(a), including compensatory and punitive damages and declaratory and injunctive relief, as provided by 42 U.S.C. § 3613(c).

**SECOND CLAIM FOR RELIEF**
**[California Unruh Act]**
**Cal. Civil Code § 51 et seq.**

53. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

54. By the conduct alleged herein, Defendants, a California business establishment leasing of dwellings, intentionally engaged in unlawful discrimination based on race, disability, or source of income that denied Plaintiff the full and equal enjoyment of Defendants' accommodations, advantages, facilities, privileges, or services.

55. Accordingly, Wafer is a plaintiff who has directly experienced a denial of rights because of her membership in a protected class as defined by Civil Code Sections 51 and 52, entitling her to relief including general and special compensatory damages and punitive damages, up to a maximum of treble damages but in no case less than four thousand dollars as set forth in Civil Code Section 52, as well as declaratory and injunctive relief.

**THIRD CLAIM FOR RELIEF**
**[California Fair Employment and Housing Act]**
**Cal. Gov't Code § 12927 et seq.**

56. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

57. By the conduct alleged herein, Defendants injured Plaintiff by committing one or more of the following unlawful housing practices:

    a.  Engaging in discrimination on the basis of race, disability, or source of income in violation of Cal. Govt. Code §§12927(c)(1) and 12955(a), including refusal to make reasonable accommodations;

a. Making statements, with respect to the sale or rental of a housing accommodation that indicates any preference or limitation based source of income or disability in violation of aba 12955(c);

b. Violating the Unruh Civil Rights Act in violation of aba 12955(d);

c. Retaliating in violation of aba 12955(f);

d. Aiding, abetting, compelling another to commit violations of Fair Employment and Housing Act in violation of Cal. Gov't Code §12955(g);

e. Discriminating because of race, disability, or source of income in in violation of Cal. Gov't Code §12955(i);

f. Denying Plaintiff access to, or membership or participation in, an online application system because of her race, disability, and source of income to discourage or deny her access to a rental dwelling, in violation of Cal. Gov't Code §12955(j);

g. Making unavailable housing opportunities because of race, disability, or source of income in violation of Cal. Gov't Code §12955(k);

h. Discriminating through private land use practices, decisions, and authorizations

i. because of race, disability, or source of income in violation of Cal. Gov't Code §12955(l);

j. Interfering with the exercise of rights under the Fair Employment and Housing Act in violation of §12955.7;

58. As a result of Defendants' unlawful discriminatory conduct, Plaintiff is an "aggrieved person" as defined in Cal. Gov't Code § 12989.1 and therefore entitled to relief under Gov't Code § 12989.2.

**FOURTH CLAIM FOR RELIEF**
**[California Unfair Competition Act]**
**Cal. Bus. & Professions Code § 17200 et seq.**

59. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

60. Defendants Eastgate Terrace LLP, and BLVD Inc. are California business establishments the rent dwellings, which, through their agents, employees, and officers, have engaged in business acts or practices that constitute unfair competition as defined in the Unfair Competition Law, Business and Professions Code section 17200 et seq.

61. These acts or practices include, but are not limited to, unlawful, fraudulent, and/or unfair business acts and practices in violation of the California Fair Employment and Housing Act, California Unruh Act, the Fair Housing Act, but also the of unfair, deceptive, untrue, or misleading advertising which misrepresented the rental rate, availability, and terms as to the units Plaintiff applied for,.

62. Plaintiff suffered substantial injury as a result of Defendant's unlawful, unfair, and deceptive business practices and is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

**FIFTH CLAIM FOR RELIEF**
**[Deceptive Trade Practices]**
**Bus. & Prof. Code, § 17500 et seq.**

63. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

64. Defendants Eastgate Terrace LLP, and BLVD Inc. are California business establishments engaged in the rental of dwellings , which, through their agents, employees, and officers, have engaged in business acts or practices that constitute deceptive trade practices and misleading advertising as defined in California's Business and Professions Code section 17500 et seq.

65. Defendants, with negligence or intent, publicly disseminated advertising orally and through their online application with the intent not to rent the property or services at the price stated or as advertised, at the terms advertised, or with equal opportunity offered to all applicants, in a manner likely to deceive members of the public.

66. Defendants further failed to fulfill their duty of investigation to ensure the dissemination of accurate information even though both the information relied upon and the sources of verification were within the corporation disseminating the misleading advertising

67. Plaintiff suffered substantial injury as a result of Defendant's deceptive business practices and is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

### SIXTH CLAIM FOR RELIEF
### [Breach of Duty]
### Cal. Civ. Code § 1714

68. Plaintiff realleges and incorporates by reference each preceding paragraph herein.

69. Defendants are directly and vicariously liable for breaching their duties of care, including statutory and contractual obligations, in the ownership, operation and management of the Eastgate Apartment in violation of Cal. Civ. Code § 1714.

70. Plaintiff was injured by these defendants' breach of duties. Accordingly, she is an aggrieved person entitled to relief under Cal. Civ. Code §§ 3281 and 3333.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter an ORDER:

1. Declaring that the misconduct alleged herein violates the Fair Housing Act; California's Fair Employment and Housing Act; California's Unruh Act; and California's "Unfair Competition Act."

2. Enjoining Defendants, their agents, employees, successors, and all other persons in active concert or participation from discriminating against any person because of race, disability or source of income in violation of the Fair Housing Act, California Unruh Civil Rights Act, and the California Fair Employment and Housing Act;

3. Ordering Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their

unlawful conduct, including implementing policies and procedures to ensure that no applicants or tenants are discriminated against because of race, disability, or source of income.

  4. Awarding compensatory damages to Plaintiff, according to proof;

  5. Awarding punitive damages to Plaintiff, according to proof;

  6. Awarding statutory damages to Plaintiff pursuant to Cal. Civ. Code § § 52(a) and Civ. Code § 3345;

  7. Awarding attorneys' fees and costs; and,

  8. Ordering such additional relief as the interests of justice may require.

Dated: July 22, 2024      Respectfully submitted,

*Erin Simonitch*
Erin Simonitch
California Rural Legal Assistance
Attorney for Plaintiff Romona Wafer

 */s/ Christopher Brancart*
Christopher Brancart
Brancart & Brancart
Attorney for Plaintiff Romona Wafer